HARRY DARLINGTON, JR., PROSECUTOR, v. WEST JERSEY
AND SEASHORE RAILROAD COMPANY, FRANK D.
SCHROTH, RECEIVER OF CAPE MAY REAL ESTATE
COMPANY AND HORATION HOWARD, DEFENDANTS.

Decided July 19, 1923.

**Eminent Domain—Power Under General Railroad Act—Bona
Fide Negotiations for Purchase—Power to Condemn for
Wharf Purposes.**

On *certiorari*.

Before Justices KALISCH, BLACK and KATZENBACH.

For the prosecutor, *McCarter & English*.

For the West Jersey and Seashore Railroad Company,
*Bourgeois & Coulomb*.

PER CURIAM.

The writ of *certiorari* allowed in this case was resorted to
by the prosecutor for the purpose of having this court review
the legal propriety of an order made by a justice of the Su-
preme Court, appointing commissioners in condemnation pro-
ceedings instituted by the West Jersey and Seashore Railroad
Company to take certain lands of the Cape May Real Estate
Company on Two Mile Beach, in Cape May county. Two
Mile Beach is an island, situated on Atlantic ocean, immedi-
ately to the south of Five Mile Beach, whereon the town of
Wildwood is located and immediately to the north of Cape
May City.

According to the petition the railroad company contem-
plates the taking of two tracts of land, one for a right of way
one hundred and ten feet in width, terminating in a wharf
property fronting three hundred and four feet on Cold Spring
harbor and containing approximately twenty-five acres, and
the other having a frontage on the harbor of one hundred and

twenty-eight feet with a large tract immediately adjoining the harbor frontage and containing in all approximately thirty-eight acres.

The contention on behalf of the prosecutor is that these lands are not needed by the railroad company for an extension of its Wildwood branch, and that it proposes to construct thereon a station yard and engine house facilities, tracks and wharves.

The grounds relied on by the prosecutor for setting aside the order appointing commissioners are as follows:

1. There was no *bona fide* negotiation for a private purchase.

2. The West Jersey and Seashore Railroad Company has no power to condemn lands for wharf purposes.

3. That the company is seeking to condemn for terminal a greater area than its charter permits.

4. That the lands are not needed for any reasonable use of the railroad company; but that the company is seeking to acquire by condemnation valuable water rights for the Pennsylvania railroad system, and the proceedings are hence a fraud upon the statutes of the state.

5. No authority exists under the General Railroad act to take the lands sought to be condemned.

Now, first, as to the claim that there was no *bona fide* effort made by the railroad company to negotiate for the land sought to be condemned.

This contention is predicated upon the circumstances that the amount offered by the railroad company for the land is so far below the price asked for it by the owner that the court should indulge a presumption that there was no *bona fide* effort to negotiate for the land. We think the negotiation for the purchase of the land was made in good faith.

At present the property consists of marsh land, and as such the price offered for it by the railroad company is not so far out of the way of its market value that we can say that the negotiation for the purchase thereof was not in good faith. And even if we thought the price offered by the company for the property was too low a figure, the fact appearing that the

offer was made and its acceptance refused excludes any notion that there was no negotiation between the parties as required by the statute. Moreover, when it appears, as it does here, that the parties are so far apart as to the value of the property to be taken and an offer having been made on one side and a refusal of the offer on the other, the statute is satisfied, for it is quite evident that further negotiations would lead to no result. Neither the case of *Jersey City* v. *National Docks Railway Co.,* 55 *N. J. L.* 194, nor *Beechwood Park* v. *Summit,* 78 *Id.* 182, cited by counsel for prosecutor in support of their contention, is applicable to the facts of the present case.

2. As to the claim that the railroad company has no power to condemn lands for wharf purposes.

There is no merit in this contention. The thirteenth section of an act entitled "An act concerning railroads" (*Pamph. L.* 1903, *ch.* 257, *p.* 652, as amended by *Pamph. L.* 1914, *ch.* 237, *p.* 490), *inter alia,* provides: "Any railroad company may, either at the time of is organization or construction or thereafter, as occasion may require, take by condemnation any of the land and property required for the right of way of its main line and branches, not exceeding one hundred feet in width, unless more shall be required for slopes of cuts or retaining walls, and all such other land and property adjoining to such right of way, as in the judgment of the directors the exigencies of the business may demand for the erection of freight and passenger depots, and all other legitimate purposes of the company." * * *

The petition of the railroad company does not go beyond the power conferred upon it by the statute.

We think the reasoning of counsel for petitioner is sound and supports the theory advanced by them that since the statute provides that lands may be taken for its main stem or branches, and for all other legitimate purposes, it authorizes a railroad company which has determined that it is necessary for proper service to the public to build a branch to tidewater to accommodate ocean traffic, it impliedly and necessarily follows that it is clothed with authority to build a wharf in order to make the service effective to the public, and the

transportation of freight possible, and that being so, it necessarily carries with it the further power to acquire the land upon which to build the wharf, if land is necessary.

In *Delaware River Transportation Co. v. Trenton,* 85 *N. J. L.* 479, it was held that the word "land," in its generic sense, embraces wharves.

3. It is further urged as a reason for setting aside the order that the railroad company is seeking to condemn for terminal purposes a greater area than its charter permits.

This contention is without substance, as is fully demonstrated by the provisions of the statute of 1914 above quoted.

4. As to the claim of the prosecutor that the lands sought to be taken are not needed for any reasonable use of the railroad company, but that the company is seeking to acquire by condemnation valuable water rights for the Pennsylvania railroad system, and a fraud upon the statutes of the state, we find not supported by any proof.

Whether or not the lands proposed to be taken are needed by the railroad company was a matter for the determination of its board of directors.

In the absence of any proof to the contrary, we must assume that the board acted in good faith and for the benefit of the public generally in supplying additional facilities for traveling and freight transportation.

All that we can be properly called upon to decide is whether the use is of a public nature. If it is the legislative authority over the subject of eminent domain, the circumstances under which and the extent to which it shall be exercised cannot be supervised by judicial inquiry. *Olmsted* v. *Proprietors of Morris Aqueduct,* 47 *N. J. L.* 311.

5. The contention that no authority exists under the General Railroad act to take the lands sought to be condemned, is adversely and completely answered by section 13 of the statute of 1903, as amended by the act of 1914, *supra.*

For the reasons set forth the writ is dismissed, with costs.